UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA MARIE WHITE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  25-cv-02724-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION AND ENTERING JUDGMENT IN DEFENDANT'S FAVOR**<br><br>Re: Dkt. Nos. 18 and 20 |

Defendant Commissioner of the Social Security Administration, acting in his official capacity, denied Plaintiff Brianna Marie White's application for disability insurance benefits under Title II of the Social Security Act.  Plaintiff asks the Court to reverse that decision and grant her benefits.  Dkt. No. 18.  The Court **DENIES** the motion and **ENTERS JUDGMENT** in favor of Defendant.

## I.   BACKGROUND

Plaintiff, appearing pro se, is a 33-year-old woman who was found disabled beginning on August 12, 2010.  Dkt. No. 9, Administrative Record ("AR") at 24.  At that time, Plaintiff reported experiencing "auditory hallucinations," "paranoia, violent or argumentative behavior, disorganized though process, and rapid, pressured speed."  AR 24, 28.  On October 18, 2022, the agency determined that Plaintiff was no longer disabled, and that determination was upheld on reconsideration.  AR 24.

Plaintiff appeared before an Administrative Law Judge ("ALJ") on January 29, 2024, Dkt. No. 10, AR 550–60, and at a supplemental hearing on June 3, 2024.  AR 51–70.  The ALJ provided Plaintiff three additional weeks after the hearing to submit any information not contained in the administrative record.  AR 68–69.  With the complete administrative record, the ALJ denied

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff's request for benefits.  AR 34.

The ALJ followed the eight-step sequential evaluation process mandated for determining whether a disability has continued or ended.  20 C.F.R. § 416.994.  At Step One, the ALJ must determine whether the claimant has any medically determinable impairments that separately or cumulatively "meet[] or equal[]" an impairment listed in 20 C.F.R., pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 416.994(b)(5)(i).  To find a qualifying impairment, the ALJ must find that Plaintiff had one extreme limitation or two marked limitations in either (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself, also referred to the as the "paragraph B" criteria.  20 C.F.R., pt. 404, subpt. P, Appendix 1.

The ALJ found that Plaintiff's current medically determinable impairments included bipolar disorder, psychotic disorder, and anxiety disorder.  AR 26.[1]  In determining Plaintiff's impairments, the ALJ discounted her allegations of post-traumatic stress disorder (PTSD).  *Id.*  The ALJ found that Plaintiff's statements alone were insufficient to establish a medically determinable impairment and that her allegations lacked supporting evidence.  *Id.* (citing 20 C.F.R. § 416.921).  For example, Plaintiff had denied a trauma history and a consultative examiner observed that she did not have a learning disability.  *Id*.

The ALJ also determined that none of Plaintiff's impairments met or equaled an impairment found in Appendix 1.  AR 26.  Among the four categories of limitations, the ALJ was required to find one severe limitation or two marked limitations.  She found one mild limitation and three moderate limitations.

First, the ALJ found Plaintiff has a mild limitation understanding, remembering, and applying information.  Plaintiff asserted that she had a learning disability, but the ALJ found that treatment notes and her testimony indicated she had mostly normal memory and a "good fund of information."  AR 26.  Second, the ALJ found Plaintiff has a moderate limitation interacting with others.  *Id.*  Plaintiff reported fluctuating moods, depression and social difficulty, expressing that

---

[1] When Plaintiff was found disabled in December 2012, she was found to have psychotic disorder, affective disorder, and substance abuse disorder.  AR 25–26.

she "tr[ies] to stay away [from people]," AR 26–27, and said that dealing with others and taking direction from authority figures was the most difficult part of work. AR 62. Examination notes indicated Plaintiff could be agitated, but cooperative. Two medical sources found she had a moderate limitation interacting with others, which the ALJ credited. AR 27. Third, the ALJ found Plaintiff had a moderate limitation concentrating, persisting, or maintaining pace category. *Id.* Plaintiff reported difficulties concentrating but also reported that she could complete household chores and tasks. *Id.* Two examining medical professionals found Plaintiff had a moderate limitation in this area, which the ALJ adopted. *Id.* Fourth, the ALJ found Plaintiff had a moderate limitation adapting or managing oneself. Plaintiff reported difficulty managing irritability and varying moods, but exams showed that she was alert, had poor judgment but fair insight, and had normal thought content. The examining medical sources found Plaintiff had a moderate limitation in this area, and the ALJ adopted that finding. *Id.*

The ALJ also considered whether Plaintiff had "a minimal capacity to adapt to changes in [her] environment or to demands that are not already part of the claimant's daily life," also referred to the as the "paragraph C" criteria. AR 27; 20 C.F.R., pt. 404, subpt. P, Appendix 1, 12.00(G)(2)(c). The ALJ found that Plaintiff does not live in an environment designed to minimize her symptomology and that the evidence did not show she suffers from marginal adjustment. AR 27. The ALJ concluded that Plaintiff had medically determinable impairments, but that those impairments did not meet or equal the impairments found in Appendix 1.

At Step Two, the ALJ must determine whether medical improvement has occurred. 20 C.F.R. § 416.994(b)(1)(i), (5)(ii). Medical improvement is any decrease in severity of impairments that were present at the time of the most recent favorable medical decision. *Id.* § 416.994(b)(1)(i). If medical improvement has occurred, the analysis proceeds to the third step. The ALJ found that by October 18, 2022, Plaintiff experienced medical improvement. AR 27–28. She no longer had auditory hallucinations, psychotic symptoms, or the disorganized thought process exhibited from 2010 to 2012. AR 28. The ALJ recognized a gap in Plaintiff's recent mental health treatment during the COVID-19 pandemic, but noted that she continued taking her medication, which had a positive effect. AR 28.

At Step Three, the ALJ must determine whether the medical improvement results in an increase in the claimant's ability to perform basic work activities. 20 C.F.R. § 416.994(b)(5)(iii). When there is such improvement, the ALJ proceeds to Step Five. *Id.* The ALJ found, for the purposes of Step Three, that Plaintiff had a residual functional capacity (RFC) which allowed her to perform simple tasks with occasional changes in work routine and occasionally interact with the public and coworkers, given that she will be off task 5% of the workday. AR 28. This was an increase in her RFC that related to her ability to work. *Id.*

At Step Five, the ALJ must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 416.994(b)(5)(v). If the impairments do not significantly limit the claimant's ability to do basic work activities, then the impairments are not considered severe. *Id.* The ALJ found that Plaintiff continues to have severe impairments. AR 29.

At Step Six, the ALJ assesses the claimant's ability to do substantial gainful activities, considering whether the claimant can still do the work she performed in the past. 20 C.F.R. § 416.994(b)(5)(vi). Plaintiff had not worked in the previous 15 years, so the ALJ proceeded to Steps Seven and Eight.

The ALJ conducted Steps Seven and Eight together, AR 25, 34–35, and considered the claimant's age, education, past work experience, and RFC to determine whether the claimant could adjust to work that exists in the economy. 20 C.F.R. § 416.994(b)(5)(vii)–(viii). The ALJ must make an RFC finding based on all the evidence, including the claimant's subjective statements and objective medical evidence. 20 C.F.R. § 416.929. The ALJ followed the two-step process in which she first determined whether there was an underlying medically determinable impairment, then evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the limitations they posed to basic work activities. 20 C.F.R. § 416.929(a). When statements are not substantiated by objective medical evidence, the ALJ makes a finding as to the consistency of the statements based on the evidence in the entire case. *Id.* § 416.929(d).

For purposes of Steps Seven and Eight, the ALJ found that Plaintiff could perform simple tasks with occasional changes in work routine, and occasionally interact with the public and

United States District Court
Northern District of California

coworkers, given that she will be off task 5% of the workday. AR 29. In making this determination, the ALJ evaluated Plaintiff's statements that could be reasonably accepted as consistent with objective medical evidence and opinion evidence. *See* 20 C.F.R. §§ 416.929, 416.920c.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence. AR 29–30. Plaintiff testified that she has PTSD, persistent insomnia, daily depression, and difficulty getting out of bed and going places. AR 30 (citing AR 51, 60–61). She reported that she does not like being in public and prefers to stay away from others, and lives in an apartment with a roommate.[2] *Id.* Plaintiff testified that her typical day includes taking her dog for two walks, attempting to sell old clothes online, listening to music or watching YouTube videos, and caring for her personal needs like laundry and dishes. *Id.* Her mother performs her grocery shopping and Plaintiff helps her mother with her candle business. AR 30 (citing AR 56–59). Plaintiff also reported difficulty concentrating long enough to endure a full workday. *Id.* (citing AR 62–63).

The ALJ found that Plaintiff's treatment history did not fully support the limitations she claimed. AR 30. Before April 2022, there was a substantial gap in treatment, but when she returned, her mental status reflected a normal state and she denied depression, mania, anxiety, hallucinations or paranoia. AR 30 (citing AR 473). Plaintiff was not seen again until August 2023, when she explained that she was experiencing anxiety and reported getting into arguments, but denied hallucinations, paranoia, or side effects from Risperdal. AR 30 (citing AR 496). Her mental status exam remained largely benign, and she was prescribed an anxiety medication. AR 30 (citing AR 498). Two months later, she reported that she was "not going out much due to anxiety," but was helping her mother's business at home and was not taking her new anxiety medication. AR 30 (citing AR 493). The mental status exam findings were normal except for the anxious mood. AR 30 (citing AR 494–95). In November, she was still not taking the new medication, but reported that certain environments like the grocery store triggered her anxiety.

_____

[2] In her opening brief, Plaintiff wrote that she now resides with her mother. Dkt. No. 18 at 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

AR 31 (citing AR 516–17).  She also reported depressive symptoms.  *Id*.  In January 2024, Plaintiff reported stress and insomnia, which she said were linked to her menstrual cycle.  AR 31 (citing AR 512–13).  Her mood was stable and she had not picked up her anxiety medication.  AR 31 (citing AR 512–14).  In February 2024, she was seen for a physical where her mother expressed concern about recent weight loss, but Plaintiff was alert and appeared well.  AR 31 (citing AR 530).  In April 2024, she was added to a referral list for psychotherapy by her regular psychiatrist, Dr. Xiao, and reported taking Risperdal and remaining stable.  AR 31 (citing AR 529).

From the medical record, the ALJ found that Plaintiff's conservative treatment was effective and led to no reported deterioration.  AR 31.  Plaintiff asked for anxiety medication, but never picked it up, and her anxiety symptoms occurred "a couple of times a day" and her insomnia symptoms occurred "monthly or every other month."  *Id*.  Since October 2022, Plaintiff "has remained stable" despite being seen by providers only four times.  *Id*.  The ALJ found that the anxiety and depressive symptoms were "clearly not severe" and so could not be debilitating.  *Id*.

The ALJ also considered examining experts' opinions.  Drs. Sara Bowerman and Sherri Sedler conducted an evaluation of Plaintiff via video conferencing in July 2022.  AR 32 (citing AR 646).  They reported that Plaintiff was a fair historian of her conditions and that she had bipolar disorder.  *Id*.  Plaintiff reported that she had anxiety but none of those symptoms were observed during the examination.  AR 32 (citing AR 465).  Her mental status examination revealed a moderate impairment regarding concentration and calculations, mild to moderate impairment for memory tasks and "poor" judgment.  AR 32 (citing AR 467–68).  They determined she could carry out simple one or two step instructions, with only mild impairment, but that she was mildly to moderately impaired in carrying out detailed or complex instructions.  AR 468.  Her concentration was moderately impaired, and her ability to respond appropriately to others was mildly to moderately impaired.  AR 469.  The ALJ afforded their opinion some weight, finding it supported by the exam showing mostly normal findings with mild to moderate impairments in memory and concentration.  AR 32–33.  The ALJ discounted their opinion about limitations responding appropriately to authority figures, and responding to normal work situations

appropriately, finding them unsupported by the record, vague, and not sufficiently defined. AR 33.

Consultative examiner Dr. Chronister evaluated Plaintiff in April 2023. Dr. Chronister reported that Plaintiff was unimpaired in her ability to perform simple, detailed, or complex tasks, and unimpaired in accepting instructions from supervisors. AR 33 (citing AR 479–80). Dr. Chronister found that Plaintiff was moderately impaired interacting with coworkers and the public, maintaining regular attendance, and dealing with the usual stress of a workplace. AR 33 (citing AR 480). The ALJ afforded Dr. Chronister's opinion some weight. AR 33. The ALJ did not give weight to Chronister's opinion that Plaintiff would have a moderate limitation maintaining attendance because she found it unsupported by exam findings, but found the opinion otherwise generally consistent. *Id*.

State agency consultants Drs. Patterson and Haroun also provided opinions, which the ALJ afforded some weight. AR 33–34 (citing 83–103, 482–85). They found Plaintiff had moderate limitations in maintaining pace and regular attendance, and that she could perform simple tasks, interact with supervisors, and adapt to changes in the workplace. *Id.* The ALJ found their opinions consistent with the mental status exams and treatment notes. *Id.*

A vocational expert testified at Plaintiff's hearing. She stated that an individual who can perform simple tasks with occasional changes in routine and occasional interaction with the public and coworkers while being off-task approximately 5% of the time could be employed as a cleaner, machine packager, or sweeper. AR 65. If that same individual was off-task 10% of time or missed two days or more of work a month, there was no competitive full-time work available in the national economy. AR 65–66.

On September 10, 2024, the ALJ denied Plaintiff's disability claim. The ALJ found that Plaintiff had sufficient RFC and the ability to make "a successful adjustment to work," and adopted the vocational expert's finding that employment was available. AR 34–35.

Plaintiff appealed the ALJ's decision to the Appeals Council and submitted a letter from Dr. Angie Xiao. AR 48. The letter indicated that Plaintiff's condition had deteriorated, and that Plaintiff's mother reported that Plaintiff was not truthful at her administrative hearing. *Id*. Dr.

United States District Court
Northern District of California

Xiao also wrote that Plaintiff's mother reported that police were called to her residence on December 12, 2024 after Plaintiff threatened to burn down the house. *Id*. The Appeals Council found that the letter "did not show a reasonable probability" that the ALJ's decision was in error. AR 2.

In support of Plaintiff's appeal to this Court, Plaintiff's mother submitted a new declaration representing that she has witnessed her daughter's psychotic episodes, during which she is unable to sleep or eat for several days. Dkt. No. 18-1 ¶¶ 3–4. Her mother helped Plaintiff secure employment at Williams Sonoma and saw her daughter struggle with balancing work and her conditions. *Id*. ¶ 5. Her mother also reported that Plaintiff becomes aggressive and expresses grandiose sentiments unconnected to reality. *Id*. ¶¶ 7–10.[3]

## II.   STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial evidence or is based on legal error. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The threshold for "substantial evidence" is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

---

[3] For purposes of this appeal, the Court may only consider evidence considered by the ALJ and the Appeals Council. *See Brewes v. Commissioner of Social Sec. Admin*, 682 F.3d 1157, 1161 (9th Cir. 2012); 42 U.S.C. § 405(g). The Court may order the case remanded to permit additional evidence to be considered by the Commissioner of Social Security. 42 U.S.C. § 405(g) ("[the Court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision…"). The Court finds that Plaintiff has not shown that the evidence in the declaration, which appears to summarize Plaintiff's mother's observations over a period of years, is new, or that there is good cause why this information could not have been submitted for consideration in the administrative record. And even if the Court could consider the new declaration, it would still find the ALJ's decision supported by substantial evidence and consistent with the medical record as discussed below.

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless. The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quotation omitted).

## III.    DISCUSSION

### A.    Evidence Before the ALJ

Plaintiff contends that the ALJ did not fully develop the medical record before denying her disability benefits claim, which she argues is reversible error. Dkt. No. 18 at 5. The Court disagrees.

A claimant bears the burden of proving disability by providing evidence of medical impairments, and claimant bears the responsibility of ensuring that records are complete. 20 C.F.R. § 416.912(a). The regulations only require the ALJ to develop the claimant's complete medical record for at least the 12 months preceding the month in which the claimant filed her disability application, unless there is "reason to believe" the development of an earlier period is necessary to determine the claimant's disability status. 20 C.F.R. § 416.912(b); *Ludwig v. Astrue*, 681 F.3d 1047, 1055 n.30 (9th Cir. 2012) ("An ALJ's duty … is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Plaintiff contends on appeal that the administrative record does not contain "certain key

United States District Court
Northern District of California

medical records that would have further supported my testimony and the [vocational expert's] conclusions." Dkt. No. 18 at 5. Those records include progress notes, treatment updates from her psychiatrist and therapist that describe her symptoms. *Id.* Defendant responds that it is not clear which records are purportedly missing from the administrative record, pointing out that the record contains notes from Plaintiff's psychiatrist from May 2021–April 2024, AR 450–547, and notes reflecting that Plaintiff was not seeing a therapist in April 2023. AR 478.

Plaintiff had the opportunity to review, object to, and supplement the administrative record after her hearing. AR 68–69. Neither party identifies in its brief any supplementary materials submitted after the hearing but before the ALJ's decision, or any objection lodged during that period.[4] Accordingly, the ALJ had no reason to believe the record was incomplete and did not commit reversible error in not further developing the record. Moreover, the administrative record included Plaintiff's health care provider's records through April 2024 before her June 2024 hearing, and for a year preceding the October 2022 determination. AR 55. To the extent Plaintiff appeals on this ground, that challenge fails. *See Ludwig*, 681 F.3d at 1055 n.30.

### B.    Consideration of Dr. Xiao's Office Notes

Plaintiff challenges the ALJ's consideration of Dr. Xiao's "medical opinion and treatment notes." Dkt. No. 18 at 6 (citing AR 473). Plaintiff contends that Dr. Xiao could not consider the severity of her mental condition because Plaintiff was unable to maintain regular appointments during the COVID-19 pandemic and feared involuntary hospitalization such that she was not forthcoming with her care provider during the April 21, 2022 appointment. Dkt. No. 18 at 6–8.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and

---

[4] After the ALJ's decision, Plaintiff's mother submitted a letter to the "SSA Appeals Dept." on September 27, 2024. AR 190–92. The letter does not attach any additional evidence, but expresses Plaintiff's mother's view that Plaintiff did not receive a fair hearing, and that the Social Security Administration's "investigation was not thoroughly conducted." *Id.* 191-92. The letter asks SSA to continue Plaintiff's benefits during the appeals process. *Id.* 191. Plaintiff's mother then submitted a number of other letters. AR 321-330. Because the Appeals Council made these documents part of the record, AR 6, the Court considers them and the other documents listed by the Appeals Council, as required by *Brewes*. But they do not change the analysis or conclusions in this order.

United States District Court
Northern District of California

prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). It does not appear that Dr. Xiao provided any medical opinion in support of Plaintiff's disability claim other than the letter submitted to the Appeals Council, which the Court considers later. Instead, Plaintiff appears to argue that the ALJ could not rely on Dr. Xiao's treatment notes on the ground that Dr. Xiao did not have certain information. In that context, the Court assesses whether substantial evidence supports the ALJ's decision given Plaintiff's representation that she feared "disclosing the full extent of [her] symptoms to Dr. Xiao." Dkt. No. 18 at 7.

Substantial evidence supports the ALJ's consideration of the treatment notes. Those notes reflect Dr. Xiao's observations from the visit, which are consistent with other visit notes from the same period. They reflect a benign mental status exam, that continued Risperdal was effective, and that Plaintiff "has been doing well" despite not being seen for more than a year. AR 473. This was consistent with the examinations by Dr. Chronister, AR 478–79, Drs. Bowerman and Sedler, AR 646, and Dr. Xiao's other examinations, AR 493, 496–98, 512–13, 516–18. Even if Plaintiff did not fully disclose her symptoms at the April 2022 office visit, as Plaintiff alleges, the ALJ reasonably relied on the substantial evidence in the record which allowed her to assess Plaintiff's functional abilities. 20 C.F.R. § 404.1520c(b)(2). The ALJ did not commit reversible error in this regard.[5]

### C.   Expert Opinion of Dr. Chronister

Plaintiff argues that the ALJ erred in considering the opinion of consultative examiner Dr. Chronister. She contends that the ALJ discounted Dr. Chronister's report that Plaintiff appeared agitated, with poor judgment, and only fair insight, which was consistent with the pattern of Plaintiff minimizing her symptoms. Dkt. No. 18 at 8. Plaintiff also claims that the ALJ did not

---

[5] Dr. Xiao submitted a letter after the ALJ's decision, AR 48, which the Appeals Council found did "not show a reasonable probability it would change the outcome of the [ALJ's] decision." AR 2. Plaintiff does not raise any specific issues related to this letter on appeal. Even if she had, the Appeals Council's findings were not unreasonable. Dr. Xiao's letter does not say that it reflects any of her own medical conclusions or observations regarding Plaintiff's condition. Instead, the letter makes clear that it is passing on either Plaintiff's own self-reporting (without specifying when or in what context Plaintiff reported the listed symptoms) or information submitted by Plaintiff's mother. *Id.*

properly discount the experts' opinions given her PTSD and avoidant behavior.  Defendant counters that Plaintiff cannot rebut the medical record with her subjective self-evaluations alone, and that the ALJ's conclusions were consistent with the objective record.  Dkt. No. 20 at 5–8.  The Court finds the ALJ did not commit reversable error as to this issue.

For claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight to any medical opinions. . . ."  20 C.F.R. § 404.1520c(a)(1).  The ALJ must assess each opinion using factors codified in the regulation.  *Id.* § 404.1520c(b)(2).  The only factors the ALJ is required to consider are consistency and supportability.  *Id.*  Consistency assesses whether a medical opinion or finding is congruent "with the evidence from other medical sources and nonmedical sources in the claim," while supportability addresses whether the medical opinions are backed up by objective findings and observations.  *Id*. § 404.1520c(c)(1)–(2).

The ALJ did not commit reversible error in affording "some weight" to Dr. Chronister's assessment.  The ALJ found Dr. Chronister's assessments of Plaintiff's moderate limitations to be "supported" by exam findings and largely consistent with others reports "finding at most moderate impairments."  AR 33.  But where the opinion was not supported by Dr. Chronister's own assessments of Plaintiff, the ALJ permissibly discounted it.  *Id.*  The ALJ also considered the moderate impairment related to dealing with stress in Plaintiff's RFC findings by limiting her to simple work with occasional changes and limited interactions.  *Id*.

While there could have been other reasonable approaches to evaluating Dr. Chronister's opinion, this Court must defer to the ALJ when "evidence is susceptible to more than one rational interpretation."  *Thomas*, 278 F.3d at 954.  The ALJ's assessment of Dr. Chronister's opinion was not reversible error.  *Luther*, 891 F.3d at 875.

### D.    Claimant's Subjective Statements

Plaintiff contends that the ALJ erred in discounting her subjective statements about her conditions.  She testified at her hearing that she suffered from PTSD from spending time in mental hospitals and being sexually harassed there.  She explained that this condition has led her to "stay out of the hospital."  AR 66–67.  She argues in her brief that she "feared that disclosing the full

extent of [her] symptoms to Dr. Xiao might result in psychiatric readmission" and that her statements to experts were not reliable because of these conditions. Dkt. No. 18 at 7–8. Defendant responds that impairments must be supported by "objective medical evidence from an acceptable medical source," Dkt. No. 20 at 6 (quoting 20 C.F.R. § 416.921), and that the ALJ was not required to credit every allegation of disabling conditions when not supported by objective evidence. Dkt. No. 20 at 7–8 (citing *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)).

In assessing a claimant's subjective testimony, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15. The question is not whether this Court writing on a blank slate necessarily would reach the same conclusion as the ALJ, but whether the ALJ's rationale is clear enough that it has "the power to convince." *Smartt*, 53 F.4th at 499. If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence. *Lingenfelter v. Astrue*, 504 F.3d 1025, 1040 (9th Cir. 2007). Ultimately, the clear and convincing standard requires an ALJ to show their work. *Smartt*, 53 F.4th at 499. "Contradiction with the medical record is a sufficient basis for rejecting claimant's subjective testimony." *Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *1 (9th Cir. Nov. 12, 2025) (quoting *Smartt*, 53 F.4th at 499).

The ALJ acknowledged that Plaintiff alleged that she had post-traumatic stress disorder (PTSD). AR 26. The ALJ observed that "claimant's symptoms are their own description of their impairments, and their statements [sic] are alone insufficient to establish a medically determinable impairment." *Id.* Plaintiff had previously denied a trauma history and generally presented a normal mental status exam, so the ALJ found that PTSD was not a medically determinable impairment. *Id.*

13

United States District Court
Northern District of California

The ALJ did not err in making this finding.  First, the ALJ was not required to accept subjective self-assessments that were otherwise unsupported by objective medical evidence. *Smartt*, 53 F.4th at 499.  Plaintiff's first assertion of trauma or PTSD as a disabling condition arose at the end of her administrative hearing.  AR 66–67.  The ALJ was allowed to weigh these statements against the totality of the record, which she found did not support a determination that PTSD was a disabling condition.  AR 26; *Smartt*, 53 F.4th at 498.  Where the ALJ finds such subjective statements inconsistent with the medical record, the ALJ is not required to credit those allegations.  *Id.* at 499.

Plaintiff's testimony regarding her PTSD symptoms is inconsistent with the record.  At the hearing, Plaintiff testified that her PTSD gave her anxiety around ambulances and caused her to avoid involuntary hospitalizations.  AR 66–67.  But on appeal, Plaintiff does not point to any office notes or professional observations that supported her alleged PTSD symptoms.  Plaintiff's brief does not indicate that she has been diagnosed with PTSD, Dkt. No. 18 at 3, and Dr. Xiao's letter does not either, AR 48.  Plaintiff only asserts she has symptoms consistent with PTSD.  Dkt. No. 18 at 9.  Given the nature of Plaintiff's late-raised symptom allegations and the absence of any diagnosis from a medical professional in the administrative record, the ALJ did not err in discounting claimant's self-assessment.  *See Smartt*, 53 F.4th at 499.

The ALJ also did not err in finding that Plaintiff's conditions have improved.  The ALJ observed that Plaintiff was found disabled in 2012 with psychotic symptoms, but that her symptoms have improved with a medication regime.  AR 26.  Plaintiff's assessment of her limitations, irritability, and judgment issues was substantially more severe than found by any examination in the record.  Dkt. No. 18 at 3, 9; AR 48.  The ALJ did not act unreasonably in discounting Plaintiff's self-assessment by relying on the observations in the record by professionals, which were supported and consistent.  *See Garrison*, 759 F.3d at 1014.

### E.    Jobs in the National Economy

Once an ALJ assesses a claimant's residual functional capacity, it must determine whether there are a significant number of jobs in the national economy that the claimant could perform.  The ALJ found that Plaintiff could perform "simple tasks with occasional changes in work

14

routine," with "occasional interaction with the public and coworkers" and "be off task 5% of the workday." AR 35, 65. Based on those limitations, the vocational expert testified that several occupations were available: a cleaner, commercial/institutional, DOT No. 381.687-014; a machine packager, DOT No. 920.685-078; and a sweeper-cleaner, industrial, DOT No. 389.683-010. *Id.* Together those three jobs accounted for approximately 374,000 jobs nationwide. *Id*. The vocational expert testified that if Plaintiff were off task 10% of the time or missed two or more days a month, that there would be no jobs in the national economy that she could perform. AR 65–66.

Plaintiff argues that the ALJ did not consider that the vocational expert testified that Plaintiff would not be employable if she was off task 10% of the time or missed two days of work per month due to her conditions. Dkt. No. 18 at 5.

The ALJ did not commit reversible error. The ALJ considered the vocational expert's testimony and the opinions of Drs. Patterson and Chronister regarding Plaintiff's ability to maintain regular attendance and decided that Plaintiff could make the adjustment to employment. AR 33, 35. In adopting the vocational expert's findings of jobs available in the national economy, the ALJ necessarily (though implicitly) found that Plaintiff would miss no more than two days of work per month. AR 35. This explanation "provide[d] sufficient reasoning that allows [the Court] to perform [its] own review," *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020), and the ALJ's decision was supported by substantial evidence in the administrative record. *See Smartt*, 53 F.4th at 494.

## IV. CONCLUSION

The Court **DENIES** Plaintiff's motion to reverse the ALJ's decision. Dkt. No. 18. The Court affirms the Commissioner's decision below. This order **TERMINATES** docket numbers 18 and 20. The Court is **DIRECTED** to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated:    4/6/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

15

United States District Court
Northern District of California